**BEARD v. UNITED STATES.**

No. 45552.

Court of Claims.

Oct. 7, 1946.

Samuel Silbiger, of Brooklyn, N.Y. (John K. White, of Brooklyn, N. Y., on the brief), for plaintiff.

William A. Stern, II, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

WHITAKER, Judge.

Plaintiff is the receiver of the Recording and Computing Machines Company. He sues to recover amounts alleged to be due on contracts between defendant and the company of which he is receiver for the manufacture of munitions during World War I. The issue presented is whether or not a settlement contract entered into on August 27, 1919 bars recovery.

This contract was in final settlement of all of the company's claims arising out of the termination of the contracts. In fact, all of the contracts which the company had entered into had been consolidated into one, numbered P-14408-1019-C. The contract of settlement was of this consolidated contract.

Under this consolidated contract the defendant had agreed to put up the money for working capital. To supervise its execution an Executive Committee was formed composed of Messrs. Ohmer, Carpenter, and Bippus. Ohmer was president of the company and its sole stockholder except for four directors' shares; Carpenter was vice-president and general manager of the company; and Bippus was the manager of the Dayton office of the Ordnance Production Division of the Army. Bippus was the chairman. This committee was in absolute charge of the affairs of the company.

It was provided that the contract could be terminated at any time the Chief of Ordnance thought the public interests so required. Pursuant to this provision, after the Armistice on November 11, 1918, defendant ordered the company to suspend some operations under the contract and to reduce others, and all operations thereunder ceased about June 25, 1919, or shortly thereafter.

Upon termination defendant had agreed to pay the company all costs it had incurred in the carrying out of the contracts plus 10 percent and less all sums that had been advanced for working capital. The basis for determining costs was set out in the contract.

Following the partial termination mentioned above the company submitted a plan for settlement, on February 5, 1919. Later, on June 12, 1919 the parties agreed on a

plan which was incorporated into a contract bearing this date. Under this the defendant agreed to pay the company $500,000 in cash and such further sum as might be necessary to cover all costs, which were enumerated, plus 10 percent, less advances.

The company, acting through the Executive Committee, then employed one Smethurst, a public accountant, and his firm to prepare a claim. Smethurst prepared the claim and certified it as correct on August 22, 1919. It was then approved by the Executive Committee and by the defendant. Five days later, on August 27, 1919, a final settlement contract was entered into under which defendant agreed to pay the company the amount of its claim, to wit, $3,751,682.75, less the amount advanced by defendant of $3,443,064.96 plus interest thereon. When the interest was computed it was ascertained that there was a balance due the company of $4,479.63. Later the company, acting through H. J. Linkert, treasurer and a member of its board of directors, submitted a voucher for this amount, and this was paid.

Thus the matter rested until 1923 or 1924, when the defendant asserted a claim against the company for alleged overpayments under the settlement contract. This claim was asserted under the following provision of the settlement contract:

"The United States reserves all its rights under the original contract to recover any payments improperly made and to enforce the liability of the Contractor and surety for defects existing at time of delivery to the United States in articles or work done which may hereafter appear."

When the company went into receivership in 1927 the defendant filed a claim for these alleged overpayments with the receiver. Thereupon the receiver had a re-audit made of the company's books and as a result thereof he now alleges that the company was underpaid.

In order to assert his claim the receiver secured passage of an Act by Congress on September 24, 1940 permitting the bringing of this suit. It was filed on September 19, 1941, five days before the expiration of the time limit fixed in the Act.

The defendant filed a counterclaim on May 24, 1943, amended March 15, 1946, based, not on the alleged overpayments, but on a claim for taxes.

Defendant relies on the contract of settlement to defeat plaintiff's claim. This contract contains this provision:

"* * * The payment of the balance so ascertained shall be in full and final compensation for articles or work delivered, services rendered and expenditures incurred by the Contractor under the original contract and in full satisfaction of any and all claims or demands in law or in equity, which the contractor, his successors, representatives, agents or assigns, may have growing out of or incident to said original contract; and said contractor hereby expressly agrees that such settlement when made shall constitute a complete termination of every question or claim, legal or equitable, liquidated or unliquidated by or on behalf of the contractor, pertaining to or growing out of said original contract."

In order to avoid the bar of this provision, plaintiff alleges in his petition that this contract was executed by the secretary of the company while he was under the domination and control of the representatives of the United States and without authority of the board of directors of the company, or of its president and principal stockholder. It is further alleged that it was executed under the mistaken belief that the original contract, P-14408-1019-C, had not been superseded by the partial settlement contract entered into on June 12, 1919.

On the taking of the testimony plaintiff insisted that Pierson, who executed the contract of August 27, 1919 on behalf of the company as its secretary, was not secretary at the time of the execution of the contract, having been previously discharged by the President, which action was confirmed by resolution of the board of directors on the same day the contract was executed. However, he makes no such claim

in his brief nor does he otherwise insist upon the claim made in the petition that the contract was executed without authority.

He now claims in his brief, first, that the contract was executed under duress and, secondly, that it was executed under a mistake as to the proper interpretation of the terms of the contracts and as to the facts underlying the claim presented by the company.

In his brief plaintiff further insists that the Act of Congress conferring jurisdiction on this court to hear and determine the company's claim waived the bar of the above-quoted provision of the contract of August 27, 1919.

This last proposition is manifestly incorrect. The Act conferring jurisdiction on this court reads as follows:

"That jurisdiction is hereby conferred upon the Court of Claims of the United States to hear, determine, and render judgment upon the claim or claims of the Recording and Computing Machines Company, of Dayton, Ohio, arising out of a series of transactions, contracts, and provisional adjustments between said Recording and Computing Machines Companies, of Dayton, Ohio, and the War Department for the manufacture of ordnance materials, equipment, instruments, and so forth, between the years 1916 and 1920, inclusive, and suit on such claims shall be instituted within one year, from the date of approval of this Act." Act Sept. 24, 1940, 54 Stat. 1361.

There is nothing therein which expressly or by implication waives the bar of the above-quoted provision of the settlement contract of August 27, 1919. If there were any doubt about this, that doubt is laid at rest by the report of the Senate Committee on the bill, Report No. 1509 of the 76th Congress, 3d Session, dated April 25, 1940. This report contains the following sentence:

"It should be noted that no bar exists to a finding by the court that the settlement was binding on claimant company, notwithstanding the alleged inequity in preparing the claim on which such settlement was made."

We are of opinion that this provision of the contract is an absolute bar to plaintiff's suit unless plaintiff is correct in saying that it was executed under duress or unless it was executed under a mutual mistake from which equity will relieve.

There is no proof whatever of duress. The Commissioner's report of the facts points to nothing indicating duress, nor do the plaintiff's exceptions to the Commissioner's report point to any evidence that does.

Ohmer, the president of the company, and practically its sole stockholder, was sick and participated but little in the winding up of its affairs with the defendant; he was not present at the meeting of the executive committee when the claim prepared by Smethurst was approved, due to illness; but the company's vice-president and general manager was present and participated actively in the preparation of its claim. There is not a suggestion that he was overborne or overinfluenced by Bippus, who was the defendant's representative on the executive committee. Smethurst, who worked up the claim, was a certified public accountant, and there is not even a whisper of a suspicion that he was directed by Bippus or anyone else to do other than ascertain and present the true facts. Ohmer, the president, did not sign the settlement contract; but it was executed by Pierson, the secretary, and it was witnessed by Linkert, the treasurer, both members of the Board of Directors; and later Linkert submitted a voucher for the amount due thereunder, which was paid and accepted. From then until the company went into receivership, 6 years later, no claim was made by Ohmer or any other officer of the company that there had been any duress or that the company had been paid less than it was entitled to. No such claim has been made by anybody other than the receiver, and this was after the defendant presented its claim of an overpayment.

The claim of duress is wholly unwarranted, as well, indeed, as a claim that the contract was executed without authority. If no authority existed for its execution the defendant's failure to complain thereof for 6 years amounts to ratification.

Nor is there a showing of mutual mistake. The basis for this claim as set out in the petition is that the accountants and others representing the company and the accountants for the defendant "disregarded the provisions of the contract of June 12, 1919, for compensation to be paid plaintiff, and erroneously and mistakenly computed such compensation under provisions of contract P-14408-1019-C as if the same had been in full force and effect."

This is not an allegation of mutual mistake of fact, but an attempted allegation of mutual mistake as to the legal rights of the parties growing out of certain written instruments. Whether or not this is a sufficient allegation of such a mistake, or, if so, whether it was such a mistake as entitles plaintiff to relief in equity, we need not decide, because the proof does not show on what basis the claim was prepared, whether on the basis of the one contract or the other, or of both. The contract of June 12, 1919, provided that, "The United States shall proceed with the contractor to determine the exact amount of the several items which make up the total amount payable to the contractor under the original contract and this supplemental agreement." The proof does not show whether or not the claim and final settlement agreement was executed in conformity thereto. We do not know whether the parties made a mistake or not, or, if so, of what that mistake consisted. There are no facts before us that would even remotely justify us in setting aside the contract of August 27, 1919 on the ground of mutual mistake.

We think the settlement contract is binding on plaintiff, and that, therefore, he is not entitled to recover. His petition will be dismissed.

The defendant offered no proof in support of its counterclaim and, for the want of proof, it is dismissed.

It is so ordered.

WHALEY, Chief Justice, and JONES and LITTLETON, Judges, concur.

MADDEN, Judge, took no part in the decision of this case.